IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-00018-BO

| | |
|---|---|
| MICHAEL S. BAREFOOT, individually, and d/b/a SECURITY AUTO SALES, SECURITY AUTO, INC., d/b/a and a/k/a SECURITY AUTO SALES, <br><br> Plaintiff, <br><br> v. <br><br> SECURITY CREDIT CORPORATION, INC., KATHY CONWAY, individually, DAVID LEE, individually, and LEO DAUGHTRY, individually, <br><br> Defendants. | **ORDER** |

This matter is before the Court on Defendants' Motion to Dismiss. Plaintiff brings the instant action pursuant to 18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced and Corrupt Organization Act ("RICO"), and several North Carolina state law claims, including North Carolina's state RICO statute. Defendants contend Plaintiffs' complaint fails to state a claim upon which relief can be granted under either the federal or state RICO statutes. For the reasons stated below, the Court DENIES Defendants' Motion to Dismiss.

BACKGROUND

The facts, as viewed in the most favorable light to Plaintiffs, are as follows. Defendants are Security Credit Corporation, Inc., and the corporation's President, Vice-President and

1

Treasurer, respectively. Plaintiffs are Michael Barefoot and Security Auto Sales, Inc.

In April 2005, Plaintiff Michael Barefoot began doing business as Security Auto Sales. Plaintiffs and Defendants made an arrangement wherein Defendants exclusively provided financing for vehicles sold by Plaintiffs. At that time, Mr. Eddie Snead, Plaintiffs' informal business partner, made an arrangement with Defendants allowing Mr. Snead to sell repossessed vehicles for Defendants for a fee.

In March 2007, Defendants told Mr. Snead that Plaintiffs must pay $44,000 to Defendants in order to continue to receive financing for vehicles Plaintiffs sold. In June 2007, Plaintiffs paid approximately $50,000 to Defendants. That same month, Defendants demanded money from Plaintiffs a second time, again threatening to stop providing financing to Plaintiffs if payments were not made. In response to Mr. Snead's prodding, Plaintiffs capitulated to Defendants' threat, giving Defendants several large vehicles. Later, again in June 2007, Defendants demanded money from Plaintiffs a third time, making the same demand. Plaintiffs refused and told Defendants that Plaintiffs would no longer do business with them.

In response, Defendants demanded Plaintiffs turn over the titles to certain vehicles that Plaintiffs had sold and Defendants had financed. Plaintiffs did so. Defendants then mailed complaint forms to Plaintiffs' customers informing them that Plaintiffs were withholding the titles of their vehicles and instructing those customers to file formal complaints with the North Carolina Department of Motor Vehicles. Several customers did so. As a result, Plaintiffs were served with citations, criminally charged; and their business license was revoked. Subsequently, Plaintiffs discovered Defendants held the titles of the vehicles at issue in the complaints made by Plaintiffs' former customers.

2

Case 5:08-cv-00018-BO   Document 23   Filed 11/12/08   Page 2 of 12

In addition, Plaintiffs allege that Defendants used their influence as shareholders at Branch Banking & Trust ("BB&T") to cause a hold be placed on Plaintiffs' personal and business accounts at BB&T. In doing so, Defendants submitted a forged affidavit to BB&T. Plaintiffs' accounts remain frozen.

During this time, Plaintiffs also discovered Mr. Snead and Defendants had worked together to sign and forge Plaintiffs' name on various loans made through Security Credit Corporation. Defendants used the proceeds of those loans for their personal and business use.

On May 9, 2008, Plaintiffs filed an amended complaint against Defendants, alleging both federal and state RICO claims as well as several other state law claims. According to Plaintiffs' complaint, Defendants devised a scheme by which they (1) extorted funds by (a) threatening to discontinue business with Plaintiffs if payments were not made to Defendants and, (b) exercising their influence as shareholders and directors of BB&T and in submitting a forged affidavit to BB&T in order to cause a hold be placed on Plaintiffs' personal and business accounts at BB&T, (2) conspired with Plaintiff Barefoot's business partner to forge checks and loan documentation in Plaintiffs' names through Security Credit Corporation for the purpose of converting those funds for Defendants' personal and business use, (3) perpetrated mail fraud by knowingly mailing false information to Plaintiffs' customers, accusing Plaintiffs of withholding titles to vehicles they had sold, and directing those customers to file individual complaints with the N.C. Department of Motor Vehicles. On June 23, 2008, Defendants filed the instant motion, contending Plaintiffs' complaint fails to state a claim upon which relief can be granted under either the federal or state RICO statutes.

3

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Though specificity is not required, a complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly,* 125 S. Ct. 1955, 1965 (2007). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Id.* at 1973.

RICO provides a private right of action for treble damages to "[a]ny person injured in his business or property by reason of a violation" of § 1962 of the Act, which contains RICO's criminal prohibitions. 18 U.S.C. § 1964(c). Specifically, § 1962(c) of the Act makes "it unlawful for any person employed by or associated with" an enterprise affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

In order to state a RICO claim under § 1962(c), a plaintiff must plead four elements: "(1) conduct by a person (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). In addition to these requirements, in order to establish plaintiff's standing, a plaintiff must also plead he was injured in his business or property by reason of the RICO violation. *Id.* at 496-97.

Here, Defendants contend Plaintiffs have failed to state a claim upon which relief can be granted under § 1962(c). Specifically, Defendants argue Plaintiffs have failed to (1) plead an

4

"enterprise" distinct from a "person" who is alleged to have violated RICO, (2) plead the elements of a predicate act of racketeering, and (3) plead a "pattern of racketeering." For the reasons stated below, this Court finds Plaintiffs have sufficiently plead each element of both their federal RICO claim and their state RICO claim.

I. An "enterprise" distinct from a "person"

In order to state a claim under § 1962(c), a plaintiff must plead an enterprise distinct from the persons alleged to have violated the Act. *Palmetto State Medical Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997)(citing *New Beckley v. Mining Corp. v. International Union, United Mine Workers of America*, 18 F.3d 1161, 1163 (4th Cir. 1994)). Defendants contend that Plaintiffs have failed to plead an enterprise distinct from a person. Plaintiffs have identified Security Credit Corporation as the enterprise and Defendants Conway, Lee and Daughtry as the persons alleged to have violated § 1962(c).

The term "enterprise" as used in 18 U.S.C. § 1962(c), "was meant to refer to a being different from, not the same as or part of, the *person* whose behavior the act was designed to prohibit, and, failing that, to punish." *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir. 1982)(overruled as it relates to § 1962(a)). A RICO action under § 1962(c) cannot survive if the alleged "enterprise" is identical to or a subsidiary or subdivision of the alleged "person." *See Computer Sciences*, 689 F.2d at 1190 ("person" and "enterprise" not distinct where the latter is a subdivision of the former); *NCNB Nat'l Bank of North Carolina v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987)("person" and "enterprise" not distinct where the latter was a holding which was shareholder of the former); *Entre Computer Centers, Inc. v. FMG of Kansas City, Inc.*, 819 F.2d 1279, 1287 (4th Cir. 1987)("person" and "enterprise" not distinct where the latter is

5

an association of franchisees and former is the franchiser).

This "distinctiveness" requirement is satisfied where the alleged "person" is a corporate owner/employee of the alleged "enterprise." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001)("[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."); *United States v. Najjar*, 300 F.3d 466, 484 (4th Cir. 2002). "[W]hether the Act seeks to prevent a person from victimizing, say, a small business...or to prevent a person from using a corporation for criminal purposes...the person and the tool, are different entities, not the same." *Cedric Kushner Promotions*, 533 U.S. at 162; *Najjar*, 300 F.3d at 484. As such, "an employee who conducts the affairs of a corporation through illegal acts comes within the terms of a statute that forbids any 'person' unlawfully to conduct an 'enterprise,' particularly when the statute explicitly defines 'person' to include 'any individual...capable of holding a legal or beneficial interest in property,' and defies 'enterprise' to include a 'corporation.'" *Cedric Kushner Promotions*, 533 U.S. at 163 (quoting 18 U.S.C. §§ 1961(3), (4)).

Plaintiffs allege the individual Defendants, Leo Daughtry, David Lee and Cathy Conway, conducted the affairs of Security Credit Corporation, Inc., the corporation in which they were officers, in violation of RICO. The individual Defendants, each a RICO "person," are distinct and separate from Security Credit Corporation, Inc., the RICO "enterprise." Plaintiffs have adequately plead a "person" distinct from the "enterprise" in order to support a claim under § 1962(c).

## II. "Predicate act of racketeering"

### A. Mail Fraud

As stated above, § 1962(c) of the Act makes "it unlawful for any person employed by or associated with" an enterprise engaged in affecting interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." The term "racketeering activity" is defined to include a host of so-called predicate acts, including "any act which is indictable under...section 1341 (relating to mail fraud)." 18 U.S.C. § 1961(1)(B). "The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud. In order to establish mail fraud as a RICO predicate act, a plaintiff must demonstrate a person 'having devised or intending to devise any scheme or artifice to defraud' uses the mail 'for purposes of executing such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2138 (2008)(quoting 18 U.S.C. § 1341).

Defendants argue Plaintiffs have failed to plead the elements of a predicate act of racketeering. Defendants contend Plaintiffs' pleadings are insufficient to support a claim of mail fraud as the predicate act for Plaintiffs' RICO claim because Plaintiffs failed to allege they relied on Defendants' fraudulent misrepresentations.

Relating to Defendants' proposed requirement of first-party reliance, the Supreme Court recently spoke to the issue, stating, "[i]f [the] proposed requirement of first-party reliance seems to come out of nowhere, there is a reason: Nothing on the face of the relevant statutory provisions imposes such a requirement." *Bridge*, 128 S. Ct. at 2138. "Using the mail to execute or attempt

to execute a scheme to defraud is indictable as mail fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Bridge*, 128 S. Ct. at 2138 (citing *Neder v. United States*, 527 U.S. 1, 24-25 (1999) ("The common-law requiremen[t] of 'justifiable reliance' . . . plainly ha[s] no place in the [mail, wire, or bank] fraud statutes")). Moreover, "one can conduct the affairs of a qualifying enterprise through a pattern of such acts without anyone relying on a fraudulent misrepresentation." *Bridge*, 128 S. Ct. at 2138. That is, "[n]o showing of reliance is required to establish that a person has violated § 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity consisting of acts of mail fraud." *Id.* at 2138. The Supreme Court has stated that "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentations." *Id.* at 2139 (quoting 18 U.S.C. § 1964(c)).

In this case, accepting Plaintiffs' allegations as true, Plaintiffs clearly suffered an injury by reason of Defendants' scheme to defraud him: as a result of Defendants' mailing of false information to Plaintiffs' customers, those customers filed complaints with the N.C. Department of Motor Vehicles, which resulted in the revocation of Plaintiffs' business license as well as Plaintiffs being criminally charged with withholding the titles to those customers' automobiles. Plaintiffs have adequately plead the elements of mail fraud as the predicate act of racketeering in support of their claim under § 1962(c), and have done so with sufficient particularity.

B. Extortion

In addition to mail fraud, "racketeering activity" also includes extortion. 18 U.S.C. § 1961(1). To sufficiently plead a violation of extortion under 18 U.S.C. § 1951 or N.C. Gen. Stat. § 14-118.4, Plaintiffs must allege Defendants attempted to obtain the Plaintiffs' property, with

8

their consent, where such consent was induced by the wrongful use of actual or threatened force, violence or fear. *Tryco Trucking Co. v. Belk Stores Servs., Inc.*, 634 F. Supp. 1327, 1334 (W.D.N.C. 1986). A plaintiff's claim of extortion can be based on the fear of economic harm, and this fear, "need not be the consequence of a direct or implicit threat by the defendant" so long as the "circumstances surrounding the alleged extortionate conduct rendered that fear reasonable."*U.S. v. Billups*, 692 F.2d 320, 330 (4th Cir. 1982)(finding extortion under Hobbs Act could be based on fear of economic harm).

Here, accepting Plaintiffs' allegations as true, Plaintiffs could reasonably fear economic harm as a result of Defendants' conduct and actions: Defendants were the sole finance provider for vehicles sold by Plaintiffs; Defendants demanded Plaintiffs make payments of cash, a motor home, an eighteen wheeler truck and a moving van in order to continue to receive financing from Defendant for vehicles Plaintiffs sold; when Plaintiff refused to make additional payments, Defendants engaged in mail fraud in order to revoke his business license and used their influence as well as a forged affidavit to freeze Plaintiffs' personal and business accounts at BB&T; all resulting in a fear of economic harm if Plaintiffs did not continue to make payments to Defendants. Plaintiffs have adequately plead the elements of extortion as the predicate act of racketeering in support of their claim under § 1962(c)

III. "Pattern of racketeering"

Pursuant to 18 U.S.C.S. § 1961(5), a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." "To establish a pattern of racketeering

9

activity, the plaintiff must show that the predicate acts are related and that they 'amount to or pose a threat of continued criminal activity.'" *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001)(quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Courts have recognized that "these criteria are not always easily applied and depend on the facts of each particular case." *Anderson v. Found. for Advancement*, 155 F.3d 500 (4th Cir. 1998). No mechanical test exists to determine the existence of a pattern of racketeering. *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987). Defendants contend Plaintiffs have failed to allege a "pattern of racketeering activity" insofar as Plaintiffs have not alleged predicate acts that are related and pose a threat of continued criminal activity.

A. Predicate acts are related

In order to demonstrate the "relatedness," predicate acts must have "same or similar purposes, results, participants, victims, or methods of commission..." *H.J., Inc.*, 492 U.S. at 240. At different points in the Plaintiffs' pleading, Plaintiffs allege Defendants executed their scheme through mail fraud and extortion. Plaintiffs allege both the mail fraud and extortion occurred in response to Plaintiffs' refusal to make additional payments to Defendants. Plaintiffs allege Defendants performed the mail fraud and extortion with one goal in mind–to defraud funds or extort monies from Plaintiffs. Plaintiffs have alleged predicate acts that meet the "relatedness" requirement necessary to establish a pattern of racketeering.

B. Predicate acts amount to or pose a threat of continued criminal activity

Continuity refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. Closed-ended continuity may be established by a "series of related predicates extending over a

10

substantial period of time." *Id.* at 242. Open-ended continuity may be established where, for example, the "related predicates themselves involve a distinct threat of long-term racketeering activity," or where the predicate acts "are part of an ongoing entity's regular way of doing business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise." *Id.* at 242-43. Significantly, "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *Id.* at 242; *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683-84 (4th Cir. 1989). A plaintiff's allegations do not satisfy the continuity prong of RICO's pattern requirement where defendant's actions were directed towards a single fraudulent goal; limited purpose, one perpetrator, one set of victims, and transactions took place close in time. *Menasco*, 886 F.2d at 683 (citing *H.J. Inc.*, 492 U.S. at 241); *see Al-Abood v. El Shamari*, 217 F.3d 225, 238-39 (4th Cir. 2000)(citing *Anderson*, 155 F.3d at 506 (holding that limited scheme to avoid paying compensation due under contract to single individual did not constitute a RICO violation); *Menasco*, 886 F.2d at 684-85 (holding that scheme to defraud only two victims did not constitute RICO violation but implying that claim alleging 27 victims of same scheme would suffice); *Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (holding that fraudulent scheme occurring over several years but impacting only one victim did not constitute RICO violation)). RICO liability is reserved for "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Menasco*, 886 F.2d at 684.

Plaintiffs allege the mail fraud and extortion are part of the way Security Credit Corporation, Inc., conducts business. Accepting Plaintiffs allegations as true, the alleged predicate acts do satisfy the continuity requirement: Plaintiffs allege that they have evidence that

11

the North Carolina Department of Motor Vehicles had similar problems with Defendants in the past; insofar as Defendants have exacted a scheme against other victims, their conduct constitutes a pattern of racketeering. Plaintiffs have alleged predicate acts that meet the continuity requirement necessary to establish a pattern of racketeering.

Whether Plaintiffs can prove the existence of a sufficient pattern of racketeering activity here pleaded is not an issue at this point in the proceeding of this case.

## CONCLUSION

Defendants' Motion to Dismiss is DENIED.

SO ORDERED.

This __10__ day of November, 2008.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE